**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| SUMMER DAWN W.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.: 1:25-cv-00423-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Plaintiff Summer Dawn W.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's

decision, or reversing it, the Court may not substitute its own judgment for the ALJ's judgment. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson,* 95 F. 4th at 1200.

## II. DISCUSSION

Plaintiff seeks judicial review of the denial of her applications for disability insurance benefits and supplemental security income, alleging disability since September 2018. The ALJ found that Plaintiff suffered from several severe impairments that limited her to a restricted range of sedentary work and prevented her from performing her past relevant work. AR 23-33. At step five of the sequential process, however, the ALJ relied on vocational expert testimony to find that Plaintiff could perform three representative occupations existing in the national economy – escort vehicle driver, document preparer, and addresser – and therefore concluded that she was not disabled. AR 33-35.

Plaintiff challenges only that step-five determination, arguing that it is not supported by substantial evidence. Specifically, she contends that the ALJ could not properly rely on the vocational expert's testimony because the identified occupations

conflict with the limitations contained in her residual functional capacity ("RFC"). Pl.'s Br. at 3-8 (Dkt. 16). Further, she alleges that other evidence calls into question the vocational expert's testimony concerning those occupations. *Id.* According to Plaintiff, those deficiencies require the escort vehicle driver and document preparer occupations to be excluded, leaving only 2,000 addresser jobs nationwide. *Id*. at 8-9. She argues that this figure is too few to constitute a significant number of jobs and carry the Commissioner's burden at step five. *Id*..

Defendant responds that substantial evidence supports the ALJ's step-five determination because the ALJ was entitled to rely on the testimony of a qualified vocational expert and the occupational information contained in the Dictionary of Occupational Titles ("DOT"). Def.'s Br. at 2-3 (Dkt. 22). Defendant maintains that no conflict precluded reliance on the escort vehicle driver occupation and that any error associated with the document preparer occupation was harmless because the remaining occupations (escort vehicle driver and addresser) still account for a significant number of jobs in the national economy. *Id*. at 4-8.

The Court agrees with Defendant. As explained below, the ALJ reasonably relied on the vocational expert's testimony at step five, and Plaintiff's challenges do not undermine the substantial evidence supporting the ALJ's determination.

**A. Legal Standard**

Before reaching step five of the sequential process, the ALJ determines the claimant's RFC – that is, the most the claimant can still do despite her limitations. In doing so, the ALJ must consider all relevant medical and other evidence and account for

limitations resulting from all medically determinable impairments, including those that are not severe. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The resulting RFC defines the claimant's functional capabilities and, in turn, the universe of work that may be considered at steps four and five.

Then, at step five, the burden shifts to the Commissioner to establish that, considering the claimant's RFC, age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999). The Commissioner may satisfy that burden through vocational expert testimony identifying occupations the claimant can perform and the number of jobs available in the national economy. *See Gutierrez v. Colvin*, 844 F.3d 804, 806-07 (9th Cir. 2016); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

Where the ALJ relies on vocational expert testimony, however, that testimony must be reconciled with the occupational requirements contained in the DOT. In the event an apparent or obvious conflict exists between the vocational expert's testimony and the DOT, the ALJ cannot rely on that testimony without first obtaining a reasonable explanation for the discrepancy. *See* SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007); *Gutierrez*, 844 F.3d at 807.

Finally, relevant here, the jobs the claimant remains capable of performing must exist in "significant numbers" in the national economy. There is no bright line rule establishing the minimum number necessary to satisfy that requirement. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). The Ninth Circuit has held, however, that

25,000 jobs nationally constitutes a significant number, albeit describing that figure as a "close call." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528-29 (9th Cir. 2014). Thus, even if the ALJ errs in relying upon one identified occupation, the error does not require remand if the remaining occupations independently exist in significant numbers in the national economy. *See Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999).

**B. Analysis**

Plaintiff challenges the ALJ's reliance on two of the three occupations identified at step five of the sequential process: escort vehicle driver and document preparer. Pl.'s Br. at 5-8 (Dkt. 16). She does not independently challenge the addresser occupation, which the vocational expert testified accounts for approximately 2,000 jobs nationally. *Id*. at 8. Instead, Plaintiff argues that both of the other occupations must be excluded and that, once they are, the 2,000 remaining addresser jobs are insufficient to satisfy the Commissioner's step-five burden. *Id*.

As to the escort vehicle driver, Plaintiff contends that the occupation is inconsistent with her RFC in two respects. First, Plaintiff's RFC indicates an ability to perform sedentary work, whereas SkillTRAN materials characterize the occupation as involving light work. *Id*. at 5. Second, the DOT's description of the occupation purportedly requires exposure to hazards and interaction with the public beyond that permitted by Plaintiff's RFC. *Id*. at 5-6.

Plaintiff separately challenges the document preparer occupation on two grounds. First, she points out that the vocational expert supplied the wrong DOT number for the

occupation – the same incorrect number the ALJ later incorporated into the decision. *Id.* at 6. According to Plaintiff, this was not simply a typographical error by the ALJ, but instead raises a question about the accuracy of the vocational expert's underlying testimony. *Id.* Second, Plaintiff contends that the document preparer occupation requires Level 3 reasoning, which she argues conflicts with the RFC's limitation to "short, routine and repetitive instructions," such that the ALJ could not rely on the occupation without first resolving that conflict. *Id.* at 7-8.

The Court need not resolve Plaintiff's challenges to the document preparer occupation, however. If the ALJ permissibly relied upon the escort vehicle driver occupation, the 37,000 jobs identified by the vocational expert for that occupation, together with the 2,000 unchallenged addresser jobs, amount to 39,000 jobs nationally. *See* AR 34 (ALJ's finding concerning the number of such occupations in the national economy). That figure exceeds the 25,000 national jobs the Ninth Circuit held sufficient in *Gutierrez*. *Supra*. Thus, any error concerning the document preparer occupation would be harmless. *See Meanel*, 172 F.3d at 1114-15 (declining to address alleged error regarding one job at step five because the number of positions for another job constituted a significant number). The dispositive question is therefore whether substantial evidence supports the ALJ's reliance on the escort vehicle driver occupation. The Court concludes that it does.

1. <u>The SkillTRAN Materials Do Not Create a Conflict with Plaintiff's Sedentary RFC</u>

Plaintiff first argues that the escort vehicle driver occupation must be excluded because it conflicts with the exertional limitation contained in her RFC. Specifically, the ALJ found that Plaintiff retained the RFC "to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a)," subject to additional exertional and nonexertional limitations. AR 26. Plaintiff contends, however, that SkillTRAN materials characterize the escort driver occupation as requiring light exertion and, to that end, state that the Department of Labor erred in classifying the occupation as sedentary. Pl.'s Br. at 5 (Dkt. 16) (citing SkillTRAN LLC, "SkillTRAN Solutions: PC Products and Web-Based Services," *available at* https://www.skilltran.com/index.php/products).[1] Thus, Plaintiff says, the escort vehicle driver occupation exceeds the sedentary exertional level the ALJ incorporated into her RFC and cannot support the step-five determination. *Id*. As part of this argument, Plaintiff emphasizes that SkillTRAN publishes Job Browser Pro – the source the vocational expert used to estimate the number of available jobs – and therefore characterizes the SkillTRAN material as significant rebuttal evidence undermining the vocational expert's testimony. *Id*. ("Given the expert's reliance on a SkillTRAN product, the publisher's opinion on the real-world requirements of this occupation are directly relevant to the number of jobs that this source would indicate could be performed at the sedentary level."); *see also* Pl.'s Reply Br. at 2-3 (Dkt. 23).

[1] As Defendant notes, this URL does not navigate to the page relating to the escort vehicle driver occupation. The correct URL appears to be SkillTRAN LLC, "Escort Vehicle Driver," *available at* https://skilltran.com/index.php/support-area/documentation/escort-vehicle-driver (last visited 9/17/26)).

Defendant has the stronger argument on this point. The relevant DOT entry expressly classifies escort vehicle driver as sedentary, and the vocational expert likewise testified that an individual limited to sedentary work could perform that specific occupation. *See* Def.'s Br. at 5-6 (Dkt. 22) (citing 20 C.F.R. § 404.1566(d)(1) ("[W]e will take administrative notice of reliable job information available from … Dictionary of Occupational Titles, published by the Department of Labor ….")). SkillTRAN's contrary view that the Department of Labor incorrectly classified the occupation does not itself create a conflict between the vocational expert's testimony and the DOT. Nor does Plaintiff's reliance on *Kilpatrick v. Kijakazi*, 35 F.4th 1187 (9th Cir. 2022), change that result. Pl.'s Reply Br. at 2 (Dkt. 23). Although the vocational expert used SkillTRAN's Job Browser Pro to estimate the number of available jobs, nothing indicates that the vocational expert also adopted SkillTRAN's separate view concerning the proper exertional classification of the occupation. The ALJ was therefore entitled to rely on the vocational expert's testimony and the DOT's sedentary classification.

2. <u>The DOT Description of Escort Vehicle Driver Does Not Conflict with Plaintiff's RFC</u>

Plaintiff next argues that, even apart from the exertional classification, the actual duties of an escort vehicle driver conflict with her RFC, which permits "no exposure to hazards" and "only occasional contact with the public." Pl.'s Br. at 5 (Dkt. 16); AR 26. Plaintiff contends that the escort vehicle driver occupation necessarily exceeds those limitations because, in her view, it requires the driver to respond to emergencies, clear traffic, and warn motorists. *Id*. The DOT describes the occupation as follows:

> Drives vehicle equipped with warning lights and signs to escort trucks hauling mobile homes on public thoroughfares: Precedes escort and maintains specified distance between pilot vehicle and escort to provide warning to other motorists and to clear traffic at locations. Communicates by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion.

*Id*. (quoting DOT 919.663-022).

Plaintiff reads too much into this description. It does not state that an escort driver must physically respond to emergencies or traffic congestion. Rather, it states that the driver communicates by radio with the truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion. In context, emergencies and traffic congestion are circumstances requiring communication and coordination among the drivers, not duties requiring the escort driver to physically respond to a hazardous condition. Likewise, although the occupation involves providing warnings to motorists and clearing traffic, the DOT does not describe those functions as requiring direct interaction with motorists, much less more than occasional public contact. The description therefore does not reveal an apparent conflict between the duties of an escort vehicle driver and the limitations contained in Plaintiff's RFC.

In short, there was no apparent conflict for the ALJ to resolve, and substantial evidence supports the ALJ's reliance on the escort vehicle driver occupation. The 37,000 escort vehicle driver jobs identified by the vocational expert, combined with the 2,000 unchallenged addresser jobs, yield 39,000 jobs nationally – more than the 25,000 jobs deemed sufficient in *Gutierrez*. The Commissioner therefore satisfied the step-five burden.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint (Dkt. 1) is DENIED, and this action be DISMISSED in its entirety, with prejudice.

DATED: September 28, 2026

______________________________
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge